KRAVITCH, Circuit Judge:
Defendant-appellant James Charles Morris appeals from the sentence imposed by the district court after he pleaded guilty to conspiracy to defraud and conspiracy to launder money. In addition to concurrent 97 month terms of imprisonment, Morris faces a three year term of supervised release and was ordered to pay $419,125 in restitution. On appeal, Morris alleges that the district court erred in ordering restitution when it failed to advise Morris of the possibility of an order of restitution before accepting his guilty plea. Morris also contends that the district court erred in imposing a sentence enhancement for abuse of a position of trust.
I. BACKGROUND
Morris and four others were indicted and charged with various counts stemming from investment fraud. In the scheme, Morris’s co-conspirators obtained investors’ funds by falsely representing the investments as legitimate high-yield opportunities. The co-conspirators then would use bank wire transfers to send funds to other persons and entities, including Morris, thus concealing the money trail and promoting the investment fraud.
Pursuant to a written plea agreement, Morris pleaded guilty to conspiracy to defraud and conspiracy to launder money, in violation of 18 U.S.C. §§ 371 and 1956(h). The agreement and the plea colloquy informed Morris that he could face the following fines: (1) for conspiracy to defraud, a maximum fine of $250,000 and (2) for conspiracy to launder money, a maximum fine of the greater of $500,000 or twice the value of the transaction. Neither the plea colloquy nor the plea agreement alerted *1293 Morris to the fact that he could be sentenced to pay restitution.
The presentence report recommended that Morris receive a two-level enhancement for abuse of a position of trust under U.S.S.G. § 3B1.3. Morris objected to the enhancement, arguing that he did not hold a special position of trust as envisioned by the Guidelines. The government responded that the enhancement was appropriate because Morris had used his attorney trust account to funnel the money in promotion of the fraudulent scheme and the other conspirators had informed the victims that Morris was a trader and an attorney. The court overruled Morris’s objection, but did grant a three-level reduction for acceptance of responsibility, which resulted in a base offense level of 28. This adjusted offense level and a criminal history category I led to a Guidelines range of 78 to 97 months. The court sentenced Morris to 97 months imprisonment to be followed by a three-year term of supervised release, and ordered Morris to pay $419,125 in restitution to sixteen victims, jointly and severally with his four co-defendants. Morris did not object at sentencing to the court order to pay restitution. This appeal follows.
II. DISCUSSION

A. Rule 11 and Restitution

Morris asserts that the district court violated Federal Rule of Criminal Procedure 11 by ordering restitution where it failed to advise him, before he pleaded guilty, of the possibility that such an order might be issued. This court reviews the issue of a Rule 11 violation for plain error when it was not raised before the district court. See United States v. James, 210 F.3d 1342, 1343 (11th Cir.2000). Morris must show that there is (1) “error,” (2) that is “plain,” and (3) that “affect[s] substantial rights.” See United States v. Olano, 507 U.S. 725, 732-34, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). “If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error ‘seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.’” Johnson v. United States, 520 U.S. 461, 467, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (quoting Olano, 507 U.S. at 732, 113 S.Ct. 1770) (other internal quotation marks omitted).
The government concedes that Morris was not made aware of the possibility of an order of restitution at either the plea hearing or in the plea agreement.[1] Rule 11(c) provides:
Advice to the defendant. Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:
(1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole or supervised release term, the fact that the court is required to consider any applicable sentencing guidelines *1294 but may depart from those guidelines under some circumstances, and, when applicable, that the court may also order the defendant to make restitution to any victim of the offense.
Fed.R.Crim.P. 11(c). Because the court erred by failing to inform Morris of the possibility of restitution, the next issue is whether or not this error affected his substantial rights. See Fed.R.Crim.P. 11(h) (“Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded.”). “We have identified three core objectives of Rule 11: (1) ensuring that the guilty plea is free of coercion; (2) ensuring that the defendant understands the nature of the charges against him; and (3) ensuring that the defendant is aware of the direct consequences of the guilty plea.” United States v. Quinones, 97 F.3d 473, 475 (11th Cir.1996). “Failure to satisfy any of the core objectives violates the defendant’s substantial rights.” Id.
Morris argues that by omitting the possibility of an order of restitution, the court failed to satisfy the concerns of Rule 11 and violated his substantial rights. Both the plea agreement and the plea colloquy, however, informed Morris that he faced a maximum fine of $250,000 on the conspiracy to defraud count and a fine on the conspiracy to launder money count of the greater of $500,000 or twice the value of the transaction. Because Morris faces a restitution order that is below the amount he was informed he could face in fines, the government contends that the his substantial rights were not impaired.
This is a question of first impression for this court. In United States v. McCarty, 99 F.3d 383 (11th Cir.1996), we concluded that a defendant’s substantial rights were not affected when a district court failed to mention specifically the possibility of restitution but the defendant had been fully advised of his obligation to make restitution in the plea agreement. See id. at 386-87. Morris, however, was not made aware of the possibility of restitution in either the plea agreement or the plea hearing.
Although Federal Rule of Criminal Procedure 11(c) requires the district court to explain a defendant’s liability for both fines and restitution, we hold that failure to do so does not impact a defendant’s substantial rights where he was warned of a potential fine larger than the actual amount of restitution ordered. Here, the restitution order was considerably less than the fine Morris was warned of at the time of his guilty plea. In a case that involved an earlier version of Rule 11, the Supreme Court stated that “matters of reality, and not mere ritual, should be controlling.” McCarthy v. United States, 394 U.S. 459, 467-68 n. 20, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969) (citation omitted). We agree with the holding of seven of the eight circuits to have ruled on this question that a defendant “is not prejudiced so long as his liability does not exceed the maximum amount that the court informed him could be imposed as a fine. It is the amount of liability, rather than the label ‘restitution,’ that affects [a defendant’s] substantial rights.” United States v. Glinsey, 209 F.3d 386, 395 (5th Cir.2000).[2] Ac *1295 cordingly, we conclude that the district court’s failure to mention the possibility of restitution was not plain error.

B. Enhancement for Abuse of a Position of Trust

Morris also contends that the district court erred in enhancing his sentence pursuant to U.S.S.G. § 3B1.3 for abuse of a position of trust. The Sentencing Guidelines require a two-level increase of a defendant’s base offense level “[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense.” U.S. Sentencing Guidelines Manual § 3B1.3 (2001). “For the adjustment to apply, the government must establish both elements: (1) that the defendant held a place of public or private trust; and (2) that the defendant abused that position in a way that significantly facilitated the commission or concealment of the offense.” United States v. Ward, 222 F.3d 909, 911 (11th Cir.2000). “We review the district court’s fact findings for clear error, but its determination whether the facts justify an abuse-of-trust enhancement we review de novo.” Id. (quoting United States v. Mills, 138 F.3d 928, 941 (11th Cir.1998)).
Morris claims that, because he did not occupy a position of public or private trust, the enhancement was erroneous. Morris was represented to the victims by his co-conspirators as a professional trader and a licensed attorney, both of which the government claims are positions of public trust. The government further contends that Morris “abused those positions when he convinced the victims of the fraud to invest or continue in their investments and by using his attorney trust account to receive, launder and transfer monies,” thereby significantly facilitating the commission of the crime.
This argument is insufficient to merit the enhancement. The government states that the enhancement was appropriate because Morris was “represented” and “described” as an attorney and trader, and points to our statement that the “determination of whether a defendant occupied a position of trust that would warrant this enhancement is assessed from the perspective of the victim of the crime.” United States v. Garrison, 133 F.3d 831, 837 (11th Cir.1998). Because the co-conspirators represented Morris as an attorney and trader, the government asserts that he occupied a position of trust from the victims’ perspective.
The government’s argument misreads the Sentencing Guidelines. Under the government’s view of § 3B1.3, Morris would face a two-level enhancement to his sentence because of the representations of others. However, “the structure of the sentencing guidelines compels the conclusion that the abuse of trust enhancement must be based on an individualized determination of each defendant’s culpability.” United States v. Moore, 29 F.3d 175, 179 (4th Cir.1994). The provisions of Part B of *1296 Chapter Three of the Sentencing Guidelines, “Role in the Offense,” provide for “adjustments to the offense level based upon the role the defendant played in committing the offense.” U.S.S.G. ch. 3, pt. B, introductory cmt. (2001). “By their very nature, the role in the offense adjustments cannot be based upon the actions of co-conspirators.” Moore, 29 F.3d at 179. Here, the government contends that the co-conspirators represented Morris to be a trader and attorney. The language and structure of the Guidelines prevents application of the § 3B1.3 enhancement to Morris based upon the representation of others.[3]
Both the Government’s statement of facts presented at the plea colloquy[4] and the probation officer’s presentence report reveal evidence that the government could have presented to bolster its argument for the § 3B1.3 enhancement.[5] This is especially true given that this case involved a guilty plea and therefore the record is quite limited. According to the statement of facts, Morris portrayed himself as a trader who had conducted successful mul-ti-million dollar international bank trades in the past.[6] The statement further relates that, after the initial investments, investors “contacted and maintained contact” with Morris directly. Furthermore, Morris and two other co-conspirators allegedly called a victim numerous times and advised, “The money is on the way.” The probation office conducted follow-up telephone calls to victims and reported the results in an addendum to the presentence report.[7] One victim stated that after her initial investment, she “later spoke directly with the defendant who confirmed he was a practicing attorney.” A second victim interviewed related that he was “introduced to the defendant through co-defendant Brown, who identified the defendant as being an attorney and the investor or ‘trader.’ ” Morris identified himself to a third victim as the trader and “indicated he was going to get him a big return on his investment.”
“Determining what constitutes a position of trust for the purposes of § 3B1.3 is not a simple task.” United States v. Iannone, 184 F.3d 214, 222 (3d Cir.1999). In addition to the Guidelines’ lack of a clear definition of what constitutes a position of trust, see id.; United States v. Mullens, 65 F.3d 1560, 1566 (11th Cir.1995), the determination of whether to apply the enhancement is highly depen *1297 dent on the specific facts in each situation. See United States v. Hart, 273 F.3d 363, 375 (3d Cir.2001). Although the facts here make the question of the applicability of § 3B1.3 difficult, we conclude that, based upon Eleventh Circuit precedent, the evidence is not enough to justify the enhancement in this case. There is no doubt that the statements attributed to Morris were integral to the fraud itself, but that is insufficient to justify the enhancement. See Mullens, 65 F.3d at 1567 (“Often there is a component of misplaced trust inherent in the concept of fraud.”); United States v. Koehn, 74 F.3d 199, 201 (10th Cir.1996) (“In every successful fraud the defendant will have created confidence and trust in the victim, but the sentencing enhancement is not intended to apply in every case of fraud.”). Morris may have abused the trust of the victims, but that is not the inquiry here. The initial question is whether or not Morris occupied a position of trust. See Mullens, 65 F.3d at 1567 (“One must hold a position of trust before it can be abused, however.”).
Morris’s status as an attorney (in actuality, a non-practicing attorney) does not necessarily mean he abused a position of trust. Although attorneys are expected to abide by ethical standards, it simply is not the case that an attorney holds a position of trust with respect to all people with whom he comes into contact solely by virtue of his status as an attorney. Morris did not have an attorney-client relationship with any of the victims. Although Morris’s status as an attorney may have been used to develop the trust of the victims, there are no facts to support the conclusion that as an attorney Morris occupied a position of trust in relation to these victims.[8]
The fact that Morris used an attorney trust account also does not merit application of the § 3B1.3 enhancement. There was no commingling of these funds with non-related funds and the account was not otherwise used. None of the victims had any connection to the attorney trust account, and there is no allegation that any knew of its existence.[9] Instead, the victims wired or sent their funds not to Morris, but to his co-conspirators. The co-conspirators in turn would transfer these funds to Morris’s attorney trust account. Morris then would immediately transfer various amounts of these commingled funds to other bank accounts in his name or the names of other persons or businesses. Therefore, the use of this account does not place Morris in a position of trust with respect to the victims of the fraud. We need not discuss whether the use of the attorney trust account “significantly enhanced the commission or concealment of the offense” because the first element required, that the defendant held a position of trust, has not been established.[10]
*1298 Some evidence supports a claim that Morris represented himself as a trader to the victims. A § 3B1.3 enhancement has been applied in situations involving brokers or financial advisors. See, e.g., Hart, 273 F.3d at 377-78; United States v. Bollin, 264 F.3d 391, 415-16 (4th Cir.2001); United States v. Davuluri, 239 F.3d 902, 909 (7th Cir.2001); United States v. Hirsch, 239 F.3d 221, 227-28 (2d Cir.2001). The Guidelines provide, “ ‘Public or private trust’ refers to a position of public or private trust characterized by professional or managerial discretion.” U.S.S.G. § 3B1.3, cmt. I.[11] The role of a financial advisor or broker is impossible to classify in general. The Third Circuit has stated:
[I]t seems apparent that the responsibilities and discretion exercised by stockbrokers spans the spectrum. At the one end are brokers who exercise authority and discretion over an account and have the power to make sales or take actions on behalf of a customer without specific direction.... At the other end are brokers who mechanically execute trades requested by customers.
Hart, 273 F.3d at 377. Each situation involving a financial advisor must therefore be analyzed individually.
Even assuming arguendo that Morris portrayed himself as a trader and had complete discretion over the victims’ funds, Eleventh Circuit case law requires more before the enhancement will apply. The guiding precedent is Mullens, which also involved the applicability of the § 3B1.3 enhancement in a situation involving investment fraud. 65 F.3d 1560 (11th Cir.1995). In Mullens, the defendant was “the head and sole stockholder in Omni,” “his representations of being a financial advisor ... encouraged investors to put their life savings into Omni,” and he had “total control” over all funds. Id. at 1566. He “sold investment opportunities in the form of shares, contract rights, and participation rights in limited partnerships. Mullens told investors the limited partnerships were formed to purchase and sell small, privately held companies for a profit. In reality, Omni was a ponzi scheme.” Id. at 1562.
Although “Mullens may have touted himself as a ‘gifted advisor who the Omni investors could trust’ and an ‘investment and financial advisor,’ ” we held that “[w]e see nothing in these circumstances to support the conclusion that a position of private trust between Mullens and his victims was created.” Id. at 1567. Mullens thus requires more than control or discretion to justify the § 3B1.3 enhancement. As explained there, “Fraudulently inducing trust in an investor is not the same as abusing a bona fide relationship of trust with that investor.” Id.
The facts here are very similar to those in Mullens. The scheme involving Morris consisted of representations by the conspirators that the investors would receive very large returns on currency, bank-note, *1299 and bank debenture trading programs. Mullens enticed victims to invest in limited partnerships, which he claimed were formed to purchase and sell small, privately held companies for profit. Both Mul-lens and Morris had complete control of the victims’ money, and each promised a large return based on their abilities.[12]
What constitutes a bona fide relationship of trust is not amenable to precise definition. We explained in Mullens that the defendant did not occupy a position of trust with respect to investors he cultivated at a country club where there was no evidence “suggesting that Mullens had a special, close, or personal attachment, or fiduciary relationship with any member of the country club.” Id. at 1566. Although we do not require the relationship to satisfy the legal definition of a fiduciary, United States v. Kummer, 89 F.3d 1536, 1547 (11th Cir.1996), we have stated that the “guideline enhancement requires more than a mere showing that the victim had confidence in the defendant. Something more akin to a fiduciary function is required.” United States v. Garrison, 133 F.3d 831, 838 (11th Cir.1998) (quoting United States v. Brunson, 54 F.3d 673, 678 (10th Cir.1995)). Garrison also quotes a similar statement from the Sixth Circuit: “[A]s used in the guideline, ‘position of public or private trust’ is a term of art, appropriating some of the aspects of the legal concept of a trustee or fiduciary.” 133 F.3d at 839 (quoting United States v. Ragland, 72 F.3d 500, 503 (6th Cir.1996)). We need not elaborate on what constitutes a bona fide relationship of trust because the facts in this case do not prove that Morris had more of a relationship of trust with his victims than did the defendant in Mullens. We acknowledge that other circuits that have considered the abuse of trust enhancement under similar facts have not followed Mullens.[13] However, this panel is bound by Mullens as Eleventh Circuit precedent unless reversed by *1300 the Supreme Court or this court en banc. Therefore, the enhancement for abuse of trust was improper.
III. CONCLUSION
The restitution order is AFFIRMED. We REVERSE and REMAND for resen-tencing without enhancement for abuse of a position of trust.

. Although Morris was not made aware of the possibility of a restitution order in the plea agreement or at the plea hearing, the government contends that certain actions and inac-tions by Morris signify that he understood the consequences of his plea. The government points to a letter that Morris wrote to the probation officer, where Morris expressed “I am very sorry for what I have done and can only hope to some how make restitution,” and notes that Morris did not object to the presen-tence report statement that he owed restitution to twenty-four victims. These facts are irrelevant and provide no support for the government’s position, for these events occurred after Morris pleaded guilty. Failure to object to the presentence report means the sentence is reviewed under the plain error standard, but it does not affect the analysis of what Rule 11 requires.

. See also United States v. Raineri, 42 F.3d 36, 42 (1st Cir.1994) (holding that error is harmless where defendant is required to pay restitution in an amount less than the potential fine of which he was warned); United States v. Gabriele, 24 F.3d 68, 71 (10th Cir.1994) (holding that defendant’s substantial rights not impaired when ordered to pay $100,000 in restitution when he knew he could be fined up to $750,000); United States v. Fox, 941 F.2d 480, 484-85 (7th Cir.1991) (holding that decision to plead guilty not prejudiced by court’s failure to advise of possibility of restitution when defendant had notice of a possibly greater fine); United States v. Miller, 900 F.2d 919, 921 (6th Cir.1990) (holding that error was harmless where defendant was required to pay restitution in an amount less *1295 than the maximum possible fine amount of which he had knowledge); United States v. Pomazi, 851 F.2d 244, 248 (9th Cir.1988), overruled in part on other grounds, Hughey v. United States, 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990) (holding that there is no surprise or prejudice in failure to mention restitution in Rule 11 hearing when defendant was told of potential liability of $500,000 and $64,229 restitution order imposed); United States v. Fentress, 792 F.2d 461, 466 (4th Cir.1986) (holding that there is no surprise or prejudice by the imposition of $38,000 restitution order when defendant might have been ordered to pay a maximum fine of $40,000). But see United States v. Showerman, 68 F.3d 1524, 1528 (2d Cir.1995) (holding that the failure to mention the possibility of restitution at the Rule 11 hearing is not harmless error even when the restitution imposed is less than the maximum fine the defendant understood he might receive).

. The dissent lists statements from the presen-tence report that, although adding information related to the underlying fraud, do not relate to the question of whether Morris occupied a position of trust relative to the victims. The dissent notes that Tolley, a co-conspirator, “even drafted an agreement to convince the victims to forego legal action against him and Morris in return for fixed dates of repayment.” Dissent at 1305. Again, this is relevant to the underlying fraud, but is not relevant to the determination of whether Morris occupied a position of trust.

. At the plea colloquy Morris accepted the statement of facts, with minor modifications offered by his attorney that are not relevant here.

. The government did discuss some of this evidence at oral argument, but did not utilize this evidence in the argument presented in its brief.

. The context of this sentence indicates that this statement relates to his dealings with co-conspirators, not that Morris portrayed himself as a trader to the victims. This assessment is bolstered by the probation officer’s presentence report, which states: "Morris was falsely portrayed to investors, by co-conspirators Calvin F. Brown and Robert Charles Stewart, as a sophisticated 'trader' of currency and bank instruments in the international financial community.”

. Although the district court did not make findings of fact, it did adopt the presentence report at Morris’s sentencing hearing.

.This does not provide a great deal of shelter from the § 3B1.3 enhancement for attorneys who commit fraud. This analysis would be different if the situation involved an attorney who abuses the trust of a client. See U.S.S.G. § 3B1.3, cmt. 1 ("This adjustment, for example, applies in the case of an embezzlement of a client’s funds by an attorney serving as a guardian.”); see also United States v. Walker, 191 F.3d 326, 338 (2d Cir.1999) ("As a general matter, an attorney occupies a position of trust with regard to his clients.”). Furthermore, fraud committed by attorneys outside the context of a client relationship can merit an enhancement under the "special skill” provision of § 3B1.3, which specifically mentions lawyers in the list of examples. U.S.S.G. § 3B1.3, cmt. 3. As the government did not raise the special skill provision in the district court or in its brief, it is not discussed here.

. If there was any evidence that the use of this attorney trust account acted to "engender the victims’ trust,” dissent at 1305, or "foster that trust,” dissent at 1305, the analysis would be different. However, there is no evidence that the victims were aware of the attorney trust account.

. Although agreeing that the government must establish (1) that Morris held a position *1298 of public or private trust, and (2) that Morris abused that position in a manner significantly facilitating the commission or concealment of the offense, see dissent at 1300 n. 1, the dissent uses evidence that speaks to the second prong to address the first prong. Whether or not the use of Morris's attorney trust account facilitated or concealed the scheme is not relevant to the first prong, unless there is evidence that the victims knew of the use of the attorney trust account and derived some measure of trust from the use of such an. account. The record provides no such evidence.

. The Supreme Court has held that "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, the guideline.” Stinson v. United States, 508 U.S. 36, 37-38, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993).

. As the dissent notes, we stated in Mullens: "To our knowledge, however, there was no evidence Mullens held himself out as an investment broker, or advertised Omni as an investment brokerage firm.” 65 F.3d 1560, 1566 (11th Cir.1995). However, the next sentence in Mullens states, "If he had run a legitimate but unprofitable enterprise, Mul-lens would have been considered nothing more than a business owner who offered investment opportunities to the public that soured.” Id. at 1566-67. That is also true in the case at hand.

. The Seventh Circuit has explicitly criticized Mullens. In United States v. Davuluri, that court stated: "To the extent that Mullens ... holds that a financial advisor with total control over investors' funds does not occupy a position of trust, we respectfully decline to follow that decision as inconsistent with our own case law.” 239 F.3d 902, 909 (7th Cir.2001); see also United States v. Bollin, 264 F.3d 391, 416 (4th Cir.2001) (finding position of trust existed where victims provided defendant with discretion to invest and expected defendant "to make trades in their best interest, which he did not do”); United States v. Reeves, 255 F.3d 208, 212 (5th Cir.2001) (finding position of trust where defendants presented themselves as financial planners and defrauded victims by persuading them to turn over money to be invested in sham companies); United States v. Iannone, 184 F.3d 214, 224 (3d Cir.1999) (holding that position of trust existed where defendant’s "position as head of a company in which the victims invested made his fraud difficult to detect, vested him with significant authority over the victim’s investment monies, and encouraged his victims to rely on his perceived integrity”); United States v. Lowder, 5 F.3d 467, 473 (10th Cir.1993) (finding that the president of a bogus financial company who was entrusted with the ability to spend the investors’ money without any oversight held a position of trust); United States v. Tardiff, 969 F.2d 1283, 1289 (1st Cir.1992) ("Virtually by definition, a money manager or financial advisor who is entrusted with, and who proceeds fully to exercise, broad discretionary powers in respect to other peoples’ money occupies a position of private trust.”).