[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 8, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-14281
Non-Argument Calendar

_____

D. C. Docket No. 05-00086-CR-002-CAR-5

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ERETTA NELSON,
OZEE ROGERS, SR.,

Defendants-Appellants,

JOSEPH JORDAN, SR.,
HEWIS CROSS,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(December 8, 2008)**

Before TJOFLAT, BLACK and BARKETT, Circuit Judges.

PER CURIAM:

In a 31-count indictment, Eretta Nelson and Ozee Rogers, Sr. were charged with five co-defendants, Joseph Jordan, Sr., Hewis Cross, Ernest Butts, Calvin McCaskill and Lola Brokemond with conspiracy to file false claims with the Internal Revenue Service ("IRS"), in violation of 18 U.S.C. § 286, Nelson was charged in nine counts with filing false claims with the IRS, in violation of 18 U.S.C. § 287, and Rogers was charged with the same offense in 15 counts.

The charges against the defendants arose out of a scheme to recruit taxpayers to file false amended income tax returns and related forms with the IRS for the purpose of obtaining tax refunds to which they were not entitled. The recruiters, including Nelson and Rogers or their operatives, told the taxpayers that the money they paid the IRS was placed in interest bearing accounts in their names, and that they could obtain the interest earned on the accounts by filing claims with the IRS. The existence of these accounts were known to the recruiters – because they had inside information, some having been IRS employees – but not the public at large. The taxpayers were therefore advised not to seek advice from a lawyer, an accountant, or the IRS because that might cause the IRS to close the loophole and bar future claims. As proof that the claims would be paid, taxpayers were shown

2

copies of refund checks the recruiters had obtained for the interest their tax payments had earned. The taxpayers who submitted claims agreed to pay a fee for the preparation of their claims and a percentage of the refunds they received.

Eighty four taxpayers filed 95 false claims for refunds during the course of the conspiracy. Defendant Jordan prepared the claims; they ranged from $33,318 to $89,612 and totaled in excess of $5.6 million. In all, the IRS paid the taxpayers $530,633 in refunds. Nelson and Rogers and the other defendants, having recruited the taxpayers, received a percentage of the refunds.

The defendants entered pleas of not guilty and stood trial before a jury. Nelson, Rogers, Jordan, and Cross were found guilty as charged; co-defendants Butts, McCaskill, and Brokemond were acquitted. Nelson and Rogers now appeal, challenging their conspiracy convictions. Rogers challenges his sentences. We address first the conspiracy conviction, then the sentences.

## I.

Appellants argue that the evidence at trial established the existence of three separate and distinct conspiracies rather than the single conspiracy charged in the indictment. They contend that the conspiracy was a "hub and spoke" conspiracy in which Jordan formed the hub and they and the others involved in the activity formed three spokes, (1) Nelson and Butts; (2) Rogers, Cross and McCaskill, and

(3) Jordan and Brokemond, and that there was no interdependence among the spokes and thus, no rim. Appellants point to evidence showing that the three groups operated independently, and play down as insignificant the fact that the three groups used the same sales pitch. Because the three conspiracies were tried together, evidence was introduced that would have been inadmissible had their groups been tried separately and thereby caused a material variance that warrants the vacation of their conspiracy convictions and a new trial.

"The standard of review for whether there is a material variance between the allegations in the indictment and the facts established at trial is twofold: first, whether a material variance did occur, and, second, whether the defendant suffered substantial prejudice as a result." United States v. Chastain, 198 F.3d 1338, 1349 (11th Cir. 1999). "A material variance between an indictment and the government's proof at trial occurs if the government proves multiple conspiracies under an indictment alleging only a single conspiracy." United States v. Alred, 144 F.3d 1405, 1414 (11th Cir. 1998) (quotation omitted). Because it is the jury's function to determine whether the evidence establishes a single conspiracy, the conceivable existence of multiple conspiracies will not constitute a material variance if a reasonable trier of fact could have found the existence of a single conspiracy beyond a reasonable doubt. Id.

In determining whether a jury could have found a single conspiracy, three factors are considered: (1) whether a common goal existed; (2) the nature of the underlying scheme; and (3) the overlap of participants. Chastain, 198 F.3d at 1349. "[T]o prove a single, unified conspiracy as opposed to a series of smaller, uncoordinated conspiracies, the government must show an interdependence among the alleged co-conspirators." United States v. Chandler, 388 F.3d 796, 811 (11th Cir. 2004). Separate transactions do not constitute separate conspiracies "so long as the conspirators act in concert to further a common goal." Id. (emphasis omitted). "If a defendant's actions facilitated the endeavors of other co[-]conspirators or facilitated the venture as a whole, then a single conspiracy is shown." Id.

A "hub-and-spoke" conspiracy is a conspiracy in which one conspirator or group of conspirators recruits separate groups of co-conspirators to carry out various functions of the illegal enterprise. Id. at 807. "[W]here the 'spokes' of a conspiracy have no knowledge of or connection with any other, dealing independently with the hub conspirator, there is not a single conspiracy, but rather as many conspiracies as there are spokes." Id. at 808. The jury may find a single conspiracy, however, "where there is a 'key man' who directs the illegal activities, while various combinations of other people exert individual efforts towards the

5

common goal." United States v. Taylor, 17 F.3d 333, 337 (11th Cir. 1994) (quotation omitted). Moreover, "there is no requirement that each conspirator participated in every transaction, knew the other conspirators, or knew the details of each venture making up the conspiracy." Id.

A material variance does not require the reversal of a conviction unless the variance substantially prejudiced the defendant. Alred, 144 F.3d at 1414. To establish prejudice, the defendant should demonstrate (1) how the proof at trial differed greatly from the charge in the indictment, such that the defendant was unfairly surprised or was unable to prepare an adequate defense, or (2) there were so many separate conspiracies or defendants before the jury that there was a substantial likelihood that the jury transferred proof of one conspiracy to the defendant involved in another. Id. at 1415. We have indicated that it is unlikely that a defense at trial would have varied if, in either event, the underlying crimes charged and the elements of proof would be identical. United States v. Calderon, 127 F.3d 1314, 1328 (11th Cir.1997), modified on other grounds by United States v. Toler, 144 F.3d 1423, 1427 (11th Cir. 1998). Further, a jury's verdict shows that the jury was not confused by the evidence and was able to assign conspiratorial liability on an individual basis in cases where some of the defendants charged were not found guilty of the conspiracy alleged against them. Id.

In this case, the jury reasonably could find a single conspiracy because: (1) all the conspirators shared a common goal to encourage taxpayers to file false claims so they could gain fees and obtain a percentage of any refunds; (2) the nature of the conspiracy was such that it would be reasonable to expect that Jordan, its leader, was recruiting others to recruit taxpayers to file false claims; and (3) there was some overlap because members of each group worked with each other, and all groups worked with Jordan. To the extent this was a "hub and spoke" conspiracy, there was a connection between the spokes because the Rogers/Cross/McCaskill group used copies of U.S. Treasury refund checks from Brokemond and a recruit of the Nelson/Butts group to induce a taxpayer to file a false claim. Additionally, appellants did not show they were prejudiced by any material variance because they have not explained how they were unfairly surprised or whether they were unable to prepare a defense, and the fact that the jury's verdict acquitted three of the defendants of the conspiracy charge indicates that it was able to assign conspiratorial liability on an individual basis.

## II.

## A.

Rogers argues that the district court deprived him of his Sixth Amendment right to counsel when it granted his request to represent himself at sentencing;

7

although he waived his right to counsel, he did not do so knowingly or intelligently, nor did he unequivocally assert his right to represent himself. His waiver was deficient, he says, because the court failed to advise him of the potential sentence he might face or that, if he could not afford counsel, the court would appoint one or offer the assistance of standby counsel. He therefore argues that the court left him with two choices: (1) continue with his attorney whom he felt was unqualified, or (2) represent himself. He chose to represent himself.

Rogers argues that, under the circumstances present here, we should presume prejudice. We refuse to do so and thus address his alternative argument, that prejudice occurred because the court incorrectly calculated the Guidelines sentencing range, failed to discuss the sentencing factors of 18 U.S.C. § 3553(a), and failed to determine whether he knew what those factors were.

A defendant has a constitutional right to proceed without counsel when he knowingly, voluntarily, and intelligently elects to do so. Faretta v. California, 422 U.S. 806, 833-36, 95 S.Ct. 2525, 2540-42, 45 L.Ed.2d 562 (1975). "Whether a waiver of counsel is knowing and intelligent is a mixed question of law and fact which we review de novo." United States v. Cash, 47 F.3d 1083, 1088 (11th Cir. 1995). A defendant also should be informed of the dangers and disadvantages of self-representation, ideally at a hearing. United States v. Garey, 540 F.3d 1253,

8

1266-67 (11th Cir. 2008) (en banc).  The court should engage the defendant in a colloquy to elicit information regarding his background, his understanding of the charges, and his knowledge of the court's rules and procedures he must follow.  Id. at 1266.  It is enough that the court is assured that the defendant "(1) understands the choices before him, (2) knows the potential dangers of proceeding pro se, and (3) has rejected the lawyer to whom he is constitutionally entitled."  Id.  Factors relevant in assessing the defendant's understanding include: (1) the defendant's age, educational background, and physical and mental health; (2) the extent of the defendant's contact with lawyers, prior to trial; (3) the defendant's knowledge of the charges, possible defenses, and potential penalties; (4) the defendant's understanding of procedure and evidence rules; (5) the defendant's experience in similar proceedings; (6) whether standby counsel was appointed; and (7) any mistreatment or coercion of the defendant.  Cash, 47 F.3d at 1088-89.

The record indicates that Rogers expressly stated that he wanted to represent himself, indicated he read the presentence investigation report ("PSI") which informed him of the potential penalties he was facing, and was informed of the dangers of self-representation and the sentencing process.  Accordingly, he did not suffer the deprivation of his right to counsel.

B.

9

Rogers argues that, in determining the Guidelines sentence range, the district court inappropriately applied the abuse-of-trust enhancement pursuant to U.S.S.G. § 3B1.3, because he did not maintain a position of trust with respect to the IRS, the victim of his offense. Rogers did not present this argument to the district court at the sentencing hearing; hence, we consider the argument under the plain error standard of review.[1] United States v. Bennett, 472 F.3d 825, 831 (11th Cir. 2006). Rogers must show the court committed error, that the error was plain, and that the error affected his substantial rights. Id. at 831. A defendant shows that his substantial rights were affected if he can show that there is a reasonable probability that there would have been a different result had there been no error. Id. at 831-32. If those conditions are met, then we may exercise our discretion to notice the error, only if the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. at 832.

Section 3B1.3 of the Guidelines provides for a two-level enhancement "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the

---

[1] All that Rogers said to the court at sentencing was that there was no evidence showing that he told any of the taxpayers that Jordan was an attorney. He was wrong. A taxpayer witness at trial testified, however, that Rogers informed her that "Joe" was an attorney. Given the other evidence in the record, it was more likely than not the "Joe" Rogers referred to was Jordan.

10

offense." U.S.S.G. § 3B1.3. The Guidelines application notes provide that "'Public or private trust' refers to a position of public or private trust characterized by professional or managerial discretion." Id., comment. (n.1). The enhancement applies to "a case in which the defendant provides sufficient indicia to the victim that the defendant legitimately holds a position of private or public trust when, in fact, the defendant does not." Id., comment. (n.3). The defendant must, himself, hold a position of trust. United States v. Morris, 286 F.3d 1291, 1297 (11th Cir. 2002). "The relationship between the defendant and the victim must be more significant than that of an arm's-length business transaction." United States v. Harness, 180 F.3d 1232, 1236 (11th Cir. 1999). The evidence must show that the defendant had a special, close, or personal attachment, or fiduciary relationship with the victim. Morris, 286 F.3d at 1299. The enhancement only applies if: (1) the defendant abused a position of trust with respect to the victim of the crime; and (2) the position of trust contributed in a significant way to facilitating the offense. Harness, 180 F.3d at 1236.

Rogers fails to satisfy the plain error test. He has not demonstrated a reasonable probability that the district court would have imposed different sentences had it not employed the abuse-of-trust enhancement. The sentences Rogers received at the bottom of his Guidelines sentencing range, were within the

11

sentencing range the court would have used had it not made the enhancement, and the court gave no indication that it would have been inclined to give lower sentences. Cf United States v. Wood, 430 F.3d 1323, 1326 (11th Cir. 2005) (holding, in Booker[2] error case, where defendant was sentenced at low-end of guideline range, that defendant did not establish a reasonable probability of a different result where court expressed no desire to impose a lower sentence); United States v. Fields, 408 F.3d 1356, 1361 (11th Cir. 2005) (holding that the fact that the defendant was sentenced to the bottom of the mandatory guidelines range, without more, was insufficient to satisfy the third prong's requirement that the defendant show a reasonable probability of a lesser sentence under an advisory guideline system).

C.

Rogers argues that the court erred in enhancing his base offense level for having played an aggravating-role in the criminal enterprise. See U.S.S.G. § 3B1.1(a). The court erred, he submits, because the evidence did not show that he recruited numerous individuals, had personal contact with numerous taxpayers, or profited more than Jordan. He says that the persons that he contacted were not

---

[2] United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

participants; although Cross and Jordan were participants, Jordan was the leader who devised the plan, and the Government failed to prove that he was a leader of five participants or more. That he may have profited more than Jordan is, he contends, irrelevant to his role. Rogers did not present this argument to the district court; he therefore must establish plain error.

Section 3B1.1(a) provides for a four-level increase "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants <u>or</u> was otherwise extensive" U.S.S.G. § 3B1.1(a) (emphasis added). The Guideline's application notes provide that, when considering whether an organization is "otherwise extensive," the district court should consider all persons involved during the course of the entire offense." <u>Id.</u>, comment. (n.3). In distinguishing a leadership role, the district court should consider

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

<u>Id.</u>, comment, (n.4). More than one person can be a leader or organizer of a conspiracy. <u>Id.</u> The § 3B1.1(a) enhancement may apply even in situations where the activity involves less than five participants, so long as the defendant plays a

13

leadership role and the criminal activity was otherwise extensive. United States v. Holland, 22 F.3d 1040, 1045 (11th Cir. 1994).

Because the evidence established that (1) Rogers utilized his business Rio Marketing, Inc. to collect payments from participants and to make payments to recruiters and Jordan, (2) recruited Cross into the scheme to recruit additional participants, (3) was involved in most of the false claims introduced at trial, and (4) quit sharing some of the payments from participants with Jordan, ultimately making more than Jordan, the court properly applied the section 3B.1.1(a) enhancement. In a word, there is no plain error here.

## D.

Rogers argues that the district court's factual finding as to the amount of the intended loss has no evidentiary support. He argues that the court simply adopted the Government's position as to that amount. Although he concedes that the tax returns, which related to the loss calculation, were admitted into evidence, he contends that there was no testimony regarding the returns or specific evidence linking them to him.

We are unpersuaded. Our review of the record indicates that the evidence introduced at trial plainly supported the Government's intended loss calculation. Given this evidentiary support, the court did not err in adopting that calculation.

14

E.

Relying on the Supreme Court's decision in <u>United States v. Booker</u>, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), Rogers argues that his sentences were based on facts not found by the jury or admitted by him, in violation of the Sixth Amendment. His argument assumes that the court treated the Guidelines as mandatory, and it is frivolous. Not only did he fail to present it to the district court, it is clear from the record that the court, in fashioning his sentences, did not treat the Guidelines as mandatory; it treated them as advisory.

Appellants' conspiracy convictions and Rogers's sentences are

**AFFIRMED.**