[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10502
Non-Argument Calendar
_____

D.C. Docket No. 3:14-cr-00034-HES-JRK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARK STEVEN SZEKELY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(November 24, 2015)

Before TJOFLAT, JORDAN and JILL PRYOR, Circuit Judges.

PER CURIAM:

Mark Steven Szekely, in appealing his concurrent prison sentences, 108 months, for committing eight violations of the wire fraud statute, 18 U.S.C. § 1343, argues that the district court erred in enhancing his base offense level pursuant to U.S.S.G. § 3B1.3 by two levels for abusing a position of trust.[1]  Specifically, he argues that in identifying himself as Jon Shapiro, a lawyer, when communicating with his victims via email (and inducing them to send him money), he was not occupying a position of trust vis-à-vis his victims.  He was simply using the lawyer identity as part of his fraudulent scheme.  Assuming, though, that the court did not err in finding that he had abused a position of trust vis-à-vis his victims, he argues that the court failed to find as fact that Szekely's abuse of his position of trust significantly facilitated the commission of the wire fraud scheme.  We find no merit in Szekely's arguments and accordingly affirm.

## I.

We review for clear error a district court's factual determination that a defendant abused a position of public trust, but we review *de novo* the court's legal conclusion that the defendant's conduct justified the abuse-of-trust enhancement. *United States v. Garrison*, 133 F.3d 831, 837 (11th Cir. 1998).  The government had the burden of proving the applicability of sections that would enhance the offense level.  *See United States v. Bailey*, 961 F.2d 180, 181 (11th Cir. 1992).

---

[1]   The sentence range for Szekely's sentences was 87 to 108 months' imprisonment.  As indicated, the district court sentenced him to the high end of the range.

2

The government was required to establish by a preponderance of the evidence that Szekely abused a position of public trust. *See United States v. Kummer*, 89 F.3d 1536, 1545 (11th Cir. 1996) (explaining that "the standard for a sentencing court on a disputed fact involved in sentencing is a preponderance of the evidence").

Section 3B1.3 provides: "If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase [the offense level] by 2 levels." U.S.S.G. § 3B1.3. The commentary to § 3B1.3 provides that "[p]ublic or private trust" refers to a position of public or private trust characterized by professional or managerial discretion (*i.e.* substantial discretionary judgment that is ordinarily given considerable deference)." *Id.*, cmt. n.1.

> This adjustment also applies in a case in which the defendant provides sufficient indicia to the victim that the defendant legitimately holds a position of private or public trust when, in fact, the defendant does not. For example, the adjustment applies in the case of a defendant who (A) perpetrates a financial fraud by leading an investor to believe the defendant is a legitimate investment broker; or (B) perpetrates a fraud by representing falsely to a patient or employer that the defendant is a licensed physician. In making the misrepresentation, the defendant assumes a position of trust, relative to the victim, that provides the defendant with the same opportunity to commit a difficult-to-detect crime that the defendant would have had if the position were held legitimately.

*Id.*, cmt. n.3. Within the fraud context, we have explained that § 3B1.3 applies where the defendant is in a fiduciary, or other personal trust, relationship to the victim of the fraud, and the defendant takes advantage of the relationship to

3

perpetrate or conceal the offense.  *United States v. Ghertler*, 605 F.3d 1256, 1264 (11th Cir. 2010).

In *Ghertler*, we stated that "[t]he Commission has determined that, particularly from the perspective of the crime victim, an imposter who falsely assumes and takes advantage of a position of trust is as culpable and deserving of increased punishment as is a defendant who abuses an actual position of trust." *Ghertler*, 605 F.3d at 1265; U.S.S.G. § 3B1.3.  For example in *Ghertler*, we noted,

> "[w]hether an individual is actually a stock broker, or is just pretending to be one, is the same for applying the abuse-of-trust enhancement.  This is because it makes no difference from the victim's perspective. In either case, the defendant actually enters into a relationship of trust with the victim, who in turn grants the defendant discretion to act over his or her affairs."

*Ghertler*, 605 F.3d at 1265.

The defendant in *Ghertler* telephoned a series of companies, identified himself as a high-ranking company official, claimed he needed a quick cash transfer and provided instructions on how to transfer the money to him.  *Id.* at 1260.  We decided the district court erred in applying the abuse of trust enhancement to Ghertler because there was no relationship of trust between the defendant and his victims.  *Id.* at 1266–67.  We found that the defendant did not have a lengthy relationship with his victims or commit difficult-to-detect frauds over time with minimal oversight from superiors.  *Id.*  In fact, the company's suspicions were raised quickly because the frauds were so overt.  *Id.*

4

Particularly regarding attorneys, one's status as an attorney does not necessarily mean he or she has abused a position of trust. *United States v. Morris*. 286 F.3d 1291, 1297 (11th Cir. 2002). In *Morris*, there were insufficient facts to establish that a bona fide relationship of trust existed between the defendant and the investors. *Id.* at 1298–99.

The district court did not err in applying the § 3B1.3 two-level enhancement. Szekely was in a trust relationship with his victims, and he abused that relationship to commit the offense conduct. When posing as fictitious attorneys or other legal workers, he led his victims to believe they were in an attorney-client relationship, unlike in *Morris*. *Id.* In contrast to *Ghertler*, Szekely's victims provided him professional discretion to do what was necessary to handle their legal affairs. *Ghertler*, 605 F.3d at 1266–67. In his fictitious attorney role, he provided legal advice, treated his victims as clients and accepted their retainers and other payments. Also, his relationships with his victims lasted for years, while Ghertler's did not. *Id.*

## II.

Szekely's fall back argument—that the district court failed to find that his abuse of trust significantly facilitated the commission of his offenses—is presented

for the first time on appeal.[2]  We review claims of error raised for the first time on appeal under the plain error standard to avoid manifest injustice.  *United States v. Harness*, 180 F.3d 1232, 1234 (11th Cir.1999).  The test for plain error requires error, that is plain, and that affects the appellant's substantial rights.  *Id*.

To determine whether the defendant abused the position of trust in a way that significantly facilitated the commission of the offense, the court should inquire as to whether the defendant used any special knowledge provided by his position of trust to facilitate the offense.  *United States v. Brenson*, 104 F.3d 1267, 1287 (11th Cir. 1997).  There must be a nexus between the offense of conviction and the abuse of the position of trust such that the defendant uses the "position of trust to give him an advantage in the commission . . . of the offense."  *United States v. Barakat*, 130 F.3d 1448, 1455–1456 (11th Cir. 1997).  In *Barakat*, we reversed the § 3B1.3 enhancement because the defendant's status as the head of the Broward County Housing Authority did not give him an advantage when he committed personal tax evasion, as the crime of tax evasion was neutral as to the method by which the defendant obtained the income.  *Id.*  In *United States v. Long*, we held

---

[2]  After the district court pronounced sentence, it said: "The Court having pronounced sentence, does counsel for the government or the defendant have any objections to the sentence or the manner in which the Court has pronounced sentence other than what has been previously stated?"  Doc. 74 at 203.  Defense counsel stated that her only objections were those previously indicated, which, with respect to § 3B1.3, was that the government failed to establish the application of the enhancement.

that even if the defendant had discretion as a food service foreman, he did not abuse the specific discretion given to him in that position to bring drugs into the prison, and thus the enhancement did not apply. *United States v. Long*, 122 F.3d 1360, 1366 (11th Cir. 1997).

In communicating with his victims, Szekely acted as if he were an attorney, in a position of trust. Some victims actually believed they were in an attorney-client relationship with Szekely, which provided him with an opportunity to provide advice and ask for payment. It was obvious to the court that Szekely's use of the lawyer identity facilitated his execution of his fraudulent scheme and the commission of wire fraud---the identity was indispensable to the scheme's success. Its finding that this was so was implicit in the court's decision to sentence Szekely at the top of the Guidelines sentence range.

AFFIRMED.