[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
07/12/99
THOMAS K. KAHN
CLERK

No. 98-6157

D. C. Docket No. CR 97-S0203-NE

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KELLY D. HARNESS,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Alabama

**(July 12, 1999)**

Before BARKETT, Circuit Judge, KRAVITCH and MAGILL*, Senior Circuit
Judges.

_____

*Honorable Frank J. Magill, Senior U.S. Circuit Judge for the Eighth Circuit,
sitting by designation.

MAGILL, Senior Circuit Judge:

Kelly Harness was sentenced to twenty-seven months' imprisonment for his role in the illegal diversion of federal funds intended to benefit needy individuals facing eviction from their homes. The district court increased Harness's offense level two levels for his aggravating role, pursuant to U.S.S.G. § 3B1.1(c), and two levels for his abuse of a position of trust, pursuant to U.S.S.G. § 3B1.3. The court also declined to grant the government's motion for a downward departure for substantial assistance pursuant to U.S.S.G. § 5K1.1. Because the two level enhancement for an aggravating role was improper, we vacate the sentence and remand for resentencing.

## I. Background

The City of Huntsville, Alabama received funds from the United States Department of Housing and Urban Development (HUD) via the Emergency Shelter Grant Program, which was designed to assist individuals in temporary financial trouble facing eviction from their homes. The City of Huntsville contracted with the American Red Cross (Red Cross) to provide administrative services related to the HUD funding. The Red Cross managed this responsibility through a program called Project Happen.

2

Kelly Harness was an accountant employed by the Red Cross who served as Director for Project Happen. Harness had check signing authority over Project Happen accounts and was responsible for maintaining the records related to these accounts. Harness was also responsible for submitting reimbursement claims to the City of Huntsville for Project Happen expenditures.

To receive assistance from Project Happen, an individual having trouble making rental payments would apply for rental assistance through Advocacy for the Homeless (Advocacy). If the application was approved by James Holland, Executive Director of Advocacy, it was forwarded to Harness at Project Happen for his approval. Project Happen would then issue a check directly to the applicant's landlord to cover his or her rental payment. Project Happen would then submit the application, an eviction notice, a photocopy of the check, and a reimbursement request form to the City of Huntsville for reimbursement.

Between December 1995 and June 1997, Harness and his co-defendants, James and Jill Holland (the Hollands), misapplied over 150 checks from the Project Happen accounts. Harness made numerous payments to cover his personal obligations, including mortgage payments and credit card debts. One of the more egregious diversions by Harness involved a $24,000 payment to Advocacy, which was diverted by James Holland to purchase a van for Harness's personal use. To

hide their fraudulent diversion of funds, Harness and the Hollands fabricated payments to landlords that were supposedly made on behalf of needy applicants and falsified records in Project Happen's books. The Hollands were also actively engaged in the conspiracy, and wrote numerous fraudulent checks and created false documentation to cover their activities. The FBI estimated that the defendants illegally diverted in excess of $100,000.

Harness and the Hollands were charged in an eight-count indictment that alleged numerous violations of federal law. Harness pleaded guilty to five of the counts and testified on behalf of the government against the Hollands. The district court accepted Harness's guilty plea and sentenced him to twenty-seven months' imprisonment followed by twenty-four months' supervised release. The court enhanced Harness's offense level two levels for his aggravating role and two levels for his abuse of a position of trust. The court also declined to grant the government's motion for a downward departure for substantial assistance. Harness did not object to the probation officer's findings of fact and sentencing recommendations in his presentence investigation report (PSR) and did not object after the district court imposed the sentence. Harness now appeals his sentence, arguing that the district court's adjustments and refusal to depart downward were erroneous.

## II. Standard of Review

We review the district court's application and interpretation of the Sentencing Guidelines under the <u>de novo</u> standard, but review its findings of fact only for clear error.  See <u>United States v. Barakat</u>, 130 F.3d 1448, 1452 (11th Cir. 1997); <u>United States v. Williams</u>, 51 F.3d 1004, 1011 (11th Cir. 1995).  Because Harness did not object to the probation officer's or the district court's findings of fact and sentencing calculations, we are limited to reviewing his claims of error for the first time on appeal under the plain error standard to avoid manifest injustice.  See <u>United States v. Stevenson</u>, 68 F.3d 1292, 1294 (11th Cir. 1995) (per curiam).  "For the Court to correct plain error:  (1) there must be error; (2) the error must be plain; and (3) the error must affect substantial rights."  <u>Id.</u>

## III. Discussion

### A. Aggravating Role

Harness first argues that the district court erred by increasing his offense level two levels pursuant to U.S.S.G. § 3B1.1(c) for his aggravating role in the offense.  We agree.

Section 3B1.1(c) requires a sentencing court to enhance a defendant's offense level two levels if he was "an organizer, leader, manager, or supervisor in any criminal activity . . . ."  U.S.S.G. § 3B1.1(c).  "To qualify for an adjustment

under this section, the defendant must have been the organizer, leader, manager, or supervisor <u>of one or more other participants</u>." <u>Id.</u> comment. (n.2) (emphasis added).

The probation officer recommended that the court enhance Harness's offense level two levels because he "exercised management responsibility over the property and assets of the victim organization as contemplated by U.S.S.G. § 3B1.1(c), Application Note 2." PSR at 6, ¶ 25. This was an incorrect application of section 3B1.1(c) because the enhancement requires that the defendant organize, lead, manage, or supervise <u>another participant</u> in the criminal scheme. <u>See</u> U.S.S.G. § 3B1.1, comment. (n.2). In contrast, the sentencing court has the discretion to depart upward from the otherwise applicable sentencing range if the defendant "did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization." <u>Id.</u> The probation officer's recommendation that the court enhance Harness's offense level because he had management responsibility over the assets of the victim was error, because these facts support only a discretionary decision to depart, not a mandatory enhancement under section 3B1.1(c). <u>See, e.g.,</u> <u>United States v. Bapack</u>, 129 F.3d 1320, 1324 & n.6 (D.C. Cir. 1997) (recognizing that enhancement requires control over a participant in the

scheme, not only control over the scheme itself); United States v. Gort-DiDonato, 109 F.3d 318, 321 (6th Cir. 1997) (recognizing that enhancement required only when defendant exerts control over another participant, whereas upward departure may be appropriate if defendant controls only assets or activities of the criminal enterprise); United States v. Jobe, 101 F.3d 1046, 1068 (5th Cir. 1996) (same); United States v. Cali, 87 F.3d 571, 576-77 (1st Cir. 1996) (same); United States v. McFarlane, 64 F.3d 1235, 1239 (8th Cir. 1995) (same); United States v. Fones, 51 F.3d 663, 668 (7th Cir. 1995) (same); United States v. Greenfield, 44 F.3d 1141, 1146 (2d Cir. 1995) (same).

Perhaps recognizing the probation officer's error, the district court amended the PSR to state that it was imposing a two level adjustment under section 3B1.1(c) "because [Harness] was an organizer, leader, manager or supervisor of a criminal activity involving at least three participants."[1] Sentencing Tr. at 29. Even this conclusory statement does not indicate that Harness had the requisite control over another participant in the criminal activity to support an enhancement under section 3B1.1(c). Indeed, the findings of fact in the PSR and our review of the limited record before us reveal no evidence that would support a conclusion that

---

[1] There is no indication that the district court intended to exercise its discretion to depart from the sentencing range. Rather, every indicator suggests that the court was applying a mandatory adjustment under section 3B1.1(c).

7

Harness had any control over any of the other participants who engaged in the criminal activities. We conclude that the complete absence of any evidence or findings of fact that would support a conclusion that Harness was an organizer, leader, manager, or supervisor of one or more participants renders the district court's enhancement under section 3B1.1(c) erroneous. Furthermore, we conclude that this error was plain and that it affected Harness's substantial rights because he was sentenced at the maximum of the applicable sentencing range. See United States v. Olano, 507 U.S. 725, 734 (1993) (error is plain when it is clear or obvious; error affects substantial rights when it affects the outcome of the proceeding). We, therefore, vacate the sentence and remand for resentencing.[2]

## B.  Position of Trust

Harness next contends that the district court erred in enhancing his offense level two levels pursuant to U.S.S.G. § 3B1.3 for abusing a position of trust. We disagree.

_____

[2]We note that the record in this case is rather limited because it involved a guilty plea. The district court presided over the trial of Harness's co-defendants and undoubtedly was very familiar with the facts of this case. We recognize that the government may be able to show that Harness had the requisite role in the offense to support the enhancement, and the district court remains free to impose the enhancement if the facts support it. If the court determines that the enhancement does not apply, it may still consider whether the facts support a discretionary upward departure.

Section 3B1.3 requires a sentencing court to increase a defendant's offense level two levels if he "abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. "For the enhancement to apply, [the] defendant must have been in a position of trust with respect to the <u>victim</u> of the crime, and the position of trust must have contributed in some significant way to facilitating the commission or concealment of the offense." <u>United States v. Garrison</u>, 133 F.3d 831, 837 (11th Cir. 1998) (internal quotation marks and citations omitted). Furthermore, the position abused by the defendant must be one characterized by professional or managerial discretion, <u>see</u> U.S.S.G. § 3B1.3, comment. (n.1), and the relationship between the defendant and the victim must be more significant than that of an arm's-length business transaction. <u>See</u> <u>Garrison</u>, 133 F.3d at 839.

Harness contends that the district court erred in enhancing his offense level for abusing a position of trust because the relevant victim in this case was the United States government, and he did not occupy or abuse a position of trust with respect to the government.[3] While Harness may be correct in arguing that he did

---

[3]Harness also argues that the district court erred in enhancing his offense level under the "special skill" provision of U.S.S.G. § 3B1.3. There is no indication that the district court relied on the special skill provision to support the enhancement. Regardless of whether Harness used a special skill to further his crime, we conclude that the court's decision to enhance was proper under the abuse of position of trust provision, so we need not consider this alternative basis to sustain the enhancement.

not occupy or abuse a position of trust with respect to the government, his argument ignores the fact that the PSR identified the victim in this case as the Red Cross. The PSR states that Harness was responsible for diverting approximately $20,000 from the Red Cross. See PSR at 5, ¶ 16. This fact supports the district court's conclusion that the Red Cross was a victim in this case. In any event, Harness did not object to the PSR's conclusion that the Red Cross was the victim of the offense, see id. at 5, ¶ 17, and the district court was entitled to rely on that conclusion for purposes of applying the enhancement. See United States v. Hedges, --- F.3d ---, No. 97-4711, (11th Cir. May 21, 1999) (holding that a district court may rely on undisputed conclusory statements in the PSR even in the absence of supporting evidence).

Having concluded that the Red Cross was a victim of the offense, we now conclude that Harness occupied and abused a position of trust with respect to this victim. Harness was employed by the Red Cross, which was responsible for the distribution of HUD funds via the Project Happen program. The Red Cross named Harness to serve as Director of Project Happen and gave him check signing authority over Project Happen's accounts. Harness used his position to illegally divert Project Happen funds and used his position to conceal his and his co-defendants' fraudulent activity. Based on these facts, we are satisfied that the

10

district court did not commit error, let alone plain error, in concluding that Harness abused a position of trust. The court's two level enhancement under section 3B1.3 was therefore proper.

## C. Downward Departure

Harness finally argues that the district court erred in denying the government's motion for a downward departure pursuant to U.S.S.G. § 5K1.1. We conclude that we lack jurisdiction to consider this claim of error.

Upon motion by the government, a sentencing court may depart downward when the defendant has "provided substantial assistance in the investigation or prosecution of another person . . . ." U.S.S.G. § 5K1.1. The government filed such a motion in this case. The district court recognized that it had the discretion to depart, but concluded that a departure was not warranted in this case.

"This Court has held that a district court's discretionary refusal to depart downward is not appealable, unless the refusal was based on an erroneous belief that the court did not have the statutory authority to depart from the guideline range." United States v. Sanchez-Valencia, 148 F.3d 1273, 1274 (11th Cir. 1998) (per curiam). In this case, the district court explicitly stated that it recognized that it had the discretion to depart, but specifically declined to do so. See Sentencing

11

Tr. at 37-38.  Under these circumstances, we lack jurisdiction to review this claim of error.

## IV.  Conclusion

Although our review is limited to identifying plain error, we cannot identify any evidence or findings of fact that would support the district court's adjustment under U.S.S.G. § 3B1.1(c) for an aggravating role in the offense.  We, therefore, VACATE Harness's sentence and REMAND for resentencing consistent with this opinion.