[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-14574
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 18, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-00041-CR-T-17EAJ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

APOLINAR GOMEZ-LOPEZ,
a.k.a. Apolinar Lopez,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(April 18, 2006)**

Before BLACK, BARKETT and MARCUS, Circuit Judges.

PER CURIAM:

Apolinar Gomez-Lopez appeals his 46-month sentence, imposed after he

pled guilty to re-entry by a deported felon alien, in violation of 8 U.S.C. § 1326(a),

(b)(1). On appeal, Gomez-Lopez argues that the district court erred at sentencing by (1) assessing two criminal history points, pursuant to U.S.S.G. § 4A1.1(d), because his two-day sentence for driving without a license was not a "criminal justice sentence" as defined by U.S.S.G. § 4A1.2; (2) determining that he was "found" in the United States while serving that two-day sentence; and (3) imposing a sentence that was unreasonable under United States v. Booker, 543 U.S. 220 (2005).[1] After careful review, we affirm.

These are the facts relevant to Gomez-Lopez's sentencing claims. On February 2, 2005, a federal grand jury indicted Gomez-Lopez, a native and citizen of Mexico, for being an alien present in the United States following his deportation based on a felony conviction, in violation of 8 U.S.C. § 1326(a), (b)(1). Gomez-Lopez pled guilty to the charged crime and admitted, during his plea colloquy, that Bureau of Immigration and Customs Enforcement ("ICE") agents found him at the Pinellas County jail on January 24, 2005. Gomez-Lopez then proceeded to sentencing.

---

[1]We have jurisdiction to review the reasonableness of Gomez-Lopez's sentence, pursuant to 18 U.S.C. § 3742. See United States v. Martinez, 434 F.3d 1318 (11th Cir. 2006) (rejecting government's threshold argument that this Court lacks jurisdiction under 18 U.S.C. § 3742(a) to review a sentence within a correctly-calculated guideline range for reasonableness; concluding that "a post-Booker appeal based on the 'unreasonableness' of a sentence, whether within or outside the advisory guidelines range, is an appeal asserting that the sentence was imposed in violation of law pursuant to § 3742 (a)(1)").

According to the Presentence Investigation Report ("PSI"), on January 22, 2005, the Pinellas County Sheriff's Office, which had Gomez-Lopez in custody for driving without a license, contacted ICE after a check of Gomez-Lopez's fingerprints revealed that he was an alien who previously had been deported. A subsequent ICE investigation confirmed that, on January 9, 2003, Gomez-Lopez had been deported from the United States after being convicted of a felony. Gomez-Lopez subsequently admitted to the ICE agents that he illegally re-entered the United States in February 2004 and that he "was looking for a better life for his family," who were already in the United States.

The PSI recommended a base-offense level of 8, pursuant to U.S.S.G. § 2L1.2(a), as well as a 16-level upward adjustment for the commission of a crime of violence, U.S.S.G. § 2L1.2(b)(1)(A)(ii), and a 3-level reduction for acceptance of responsibility, U.S.S.G. § 3E1.1. Thus, Gomez-Lopez's adjusted offense level was a 21. In calculating Gomez-Lopez's criminal history, the PSI listed the following offenses: (1) in 2000, Gomez-Lopez was convicted in Florida for driving without a license; (2) in 2001, Gomez-Lopez was convicted in Florida of aggravated assault with a deadly weapon without intent to kill for which he was sentenced to one year of community control and 50 hours of community service but ultimately served 4 months' imprisonment after pleading guilty to violating the terms of his

3

community control; and (3) in 2005, Gomez-Lopez again was convicted of driving without a license in Florida and served two days in jail. The PSI assessed two criminal-history points for the 2001 offense and no points for the 2000 and 2005 convictions. The PSI added two criminal-history points under § 4A1.1(d) because Gomez-Lopez committed his instant offense while serving the 2005 sentence for driving without a license. With an adjusted offense level of 21 and a criminal history category III, Gomez-Lopez's Guidelines range was 46 to 57 months' imprisonment.

Prior to sentencing, Gomez-Lopez moved for a downward departure under U.S.S.G. § 5K2.0, arguing that the enhancement under U.S.S.G. § 2L1.2(b)(1)(A), for commission of a crime of violence, overrepresented the nature of his criminal history. Gomez-Lopez lodged no objections to the PSI's factual statements. However, he did argue at the sentencing hearing that the government failed to show that the ICE agents found him while he was serving a sentence. He asserted that the agent found him before the state court sentenced him and, thus, he was not under a sentence when found. In response, the probation office noted that Gomez-Lopez admitted during the plea colloquy that ICE agents found him in state custody. The district court overruled Gomez-Lopez's objection to the enhancement for being found in the United States while serving a sentence.

4

Gomez-Lopez then requested an adjustment to his criminal-history category, arguing that the state court had imposed a 2-day sentence only for the purpose of detaining him until the ICE agents could interview him. The district court stated that it would not second-guess the state court judgment and found it reasonable for the state court to impose a two-day sentence since it was Gomez-Lopez's <u>second</u> offense for driving without a license.

Before pronouncing sentence, the district court noted that it considered § 3553 and the Guidelines as modified by <u>United States v. Booker</u>, 543 U.S. 220 (2005). The court then sentenced Gomez-Lopez to a 46-month term of imprisonment, followed by three years' supervised release. This appeal followed.

First, Gomez-Lopez argues that the two-day sentence for driving without a license, imposed on January 23, 2005, was not a countable "criminal justice sentence," within the meaning of § 4A1.1(d), and therefore could not serve as the basis for an enhancement of his offense level under that section. Gomez-Lopez's appellate argument differs from the position he asserted in the district court when he argued that he was not "found in" the United States while serving a sentence. More specifically, Gomez-Lopez asserted that he was "found" before he started serving the sentence. Notably, he did not argue, as he does now, that the 2-day

sentence was not scoreable and could not sustain a criminal history enhancement under § 4A1.1(d).

It is well-settled that "where the district court has offered the opportunity to object and a party is silent or fails to state the grounds for objection, objection to the sentence will be waived for purposes of appeal." United States v. Nyhuis, 8 F.3d 731, 743 (11th Cir. 1993) (citation omitted). To preserve an issue for later consideration, the objection must be "sufficient to apprise the trial court and the opposing party of the particular grounds upon which appellate relief will later be sought. A general objection or objection on other grounds will not suffice." Id. (quotation omitted).

Gomez-Lopez did not object before the district court on the ground he raises now, and, accordingly, we will review his claim for only plain error. See United States v. Harness, 180 F.3d 1232, 1234 (11th Cir. 1999). To prevail under this standard, Gomez-Lopez must show "(1) error, (2) that is plain, and (3) that affects substantial rights." See United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir.) (internal quotations and citations omitted), cert. denied, 125 S. Ct. 2935 (2005). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the

6

fairness, integrity, or public reputation of judicial proceedings." Id. (quotation and citation omitted).

Pursuant to U.S.S.G. § 4A1.1(d), a defendant may receive two criminal-history points if he "committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." U.S.S.G. § 4A1.1(d). A "criminal justice sentence" is one that is countable under U.S.S.G. § 4A1.2. Id. at cmt. 4. A sentence for driving without a license is counted only if it is a term of probation of at least 1 year, or a term of imprisonment of at least 30 days. See U.S.S.G. § 4A1.2(c)(1).

Here, the district court awarded two criminal-history points to Gomez-Lopez based on the fact that he was found in the United States while serving a sentence for driving without a license. Because the sentence Gomez-Lopez was serving was for only 2 days, the district court erred in its application of the Guidelines and the error was plain. As a result of the error, Gomez-Lopez's criminal history category was determined to be III, instead of II. This error resulted in a Guideline range of 46 to 57 months' imprisonment at an offense level of 21, instead of a range of 41 to 51 months' imprisonment.

Turning to the third prong of the plain-error test, Gomez-Lopez has the burden of showing "a reasonable probability of a different result" if the court did not err in its calculation. Rodriguez, 398 F.3d at 1301. Where the effect of the error is indeterminate, the appellant has not met his burden. Id. (citation omitted). A district court's imposition of a sentence at the low end of the Guidelines range, standing alone, is insufficient to show that the court would have sentenced a defendant to a lower sentence had a lower Guideline range applied. United States v. Munoz, 430 F.3d 1357, 1375-76 (11th Cir. 2005).

Here, Gomez-Lopez's 46-month sentence was within the 41 to 51-month guideline range and the district court stated that the 46-month term of imprisonment was sufficient, but not longer than necessary. Moreover, the court said that it had considered the § 3553 factors and the effect of Booker on the Guidelines. On this record, the district court's statement that it was imposing a sentence at the low end of the range, standing alone, is insufficient to show that the error affected Gomez-Lopez's substantial rights. Cf. United States v. Fields, 408 F.3d 1356 (11th Cir. 2005) (under plain-error review, holding that the fact that the defendant was sentenced to the bottom of the mandatory Guidelines range, without more, was insufficient to satisfy the third prong's requirement that the defendant show a reasonable probability of a lesser sentence under an advisory Guideline

system).  Accordingly, Gomez-Lopez has not met his burden of showing that the error affected his substantial rights, within the meaning of the third prong of the plain-error test, and, we cannot find plain error on this basis.

Next, Gomez-Lopez argues that he was not "found in" the United States while serving his sentence because the ICE agents learned of his presence in the United States before the state court sentenced him.  We review the district court's findings of fact for clear error and "questions of law arising under the Sentencing Guidelines de novo." United States v. Crawford, 407 F.3d 1174, 1177-78 (11th Cir. 2005).

Section 4A1.1(d) provides that two points should be added to the criminal history category "if the defendant committed the instant offense while under any criminal justice system sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." U.S.S.G. § 4A1.1(d).  Section 4A1.1(d) applies "if the defendant committed any part of the instant offense (i.e., any relevant conduct) while under any criminal justice sentence." Id., comment. (n.4).  We have noted that

> [u]nder 8 U.S.C. § 1326, any alien who has been deported and thereafter enters, attempts to enter, or is at any time found in the United States, shall be fined or imprisoned. 8 U.S.C. § 1326(a)(1) and (2) (emphasis supplied).  Thus, [t]he statute contains three separate and distinct offenses, set forth disjunctively: entering, attempting to enter, or being found in the United States.

9

United States v. Clarke, 312 F.3d 1343, 1346 (11th Cir. 2002) (quotation marks omitted). "To be 'found in' the United States within the meaning of § 1326, the alien must have entered surreptitiously, bypassing a recognized immigration port of entry. The phrase 'found in' is synonymous with 'discovered in.'" Id. (quotation marks omitted). "[W]hen a defendant enters a plea of guilty to being 'found in' the United States on a certain date, the issue of when the offense was committed is settled, and the defendant may not later dispute that date." United States v. Coeur, 196 F.3d 1344, 1346 (11th Cir. 1999). "By definition, one must enter the United States, either legally or illegally, in order to be found therein." United States v. Castrillon-Gonzalez, 77 F.3d 403, 406 (11th Cir. 1996). "[T]he commencement of the crime of being 'found in' the United States is at the point of entry" and "was not complete until [the] defendant's arrest." Id.

The district court did not err by assessing two criminal-history points for commission of the instant offense of being "found in" the United States while Gomez-Lopez was in the Pinellas County jail. Gomez-Lopez's jail term began on January 23, 2005, and he admitted that he entered the United States in February 2004 after being deported. Moreover, at the plea colloquy, he admitted that immigration officials found him in the United States on January 24, 2005. Gomez-Lopez's crime of being "found in" the United States commenced as early as

10

February 2004, and was completed on January 24, 2005, when he was arrested. Therefore, Gomez-Lopez committed some portion of the instant offense while in jail, making the district court's addition of two criminal history points proper.

Finally, Gomez-Lopez argues that his 46-month sentence was unreasonable. He asserts that he returned to the United States after he was deported because he needed work to support his family and, aside from one prior felony conviction, he has been both law-abiding and hardworking. Sentences imposed under an advisory Guidelines system are reviewed for "unreasonableness." Booker, 543 U.S. at 261. Following the Booker decision, we have stated that the district court must correctly calculate the Guidelines range, and then, using the 18 U.S.C. § 3553(a) sentencing factors, can impose a more severe or more lenient sentence as long as it is reasonable. Crawford, 407 F.3d at 1179.

The § 3553(a) factors include the available sentences; the applicable Guideline range and policy statements; the nature and circumstances of the offense; and the need for the sentence to (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, (2) afford adequate deterrence to criminal conduct, (3) protect the public from further crimes of the defendant, and (4) provide the defendant with needed correctional treatment. See 18 U.S.C. § 3553(a). "[N]othing in Booker or elsewhere requires the district

11

court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors." United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005).

"Review for reasonableness is deferential." United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). "[T]he party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both th[e] record and the factors in section 3553(a)." Id. A sentence within the advisory guidelines range is not per se reasonable, but is expected to be reasonable. See id. at 788 ("when the district court imposes a sentence within the advisory Guidelines range, we ordinarily will expect that choice to be a reasonable one."). We have held that a district court's statement that it had considered the § 3553(a) factors alone is sufficient in post-Booker sentences to indicate that it considered the factors, and concluded that the defendant's sentence was reasonable because the district court accurately calculated the Guideline range and the defendant's sentence at the low end of the range reflected the court's consideration of his evidence in mitigation. See Scott, 426 F.3d at 1330.

We readily conclude that Gomez-Lopez's 46-month sentence is reasonable. Gomez-Lopez's sentence was in the middle of the correctly determined Guidelines range, a range that takes into account his offense conduct, his personal

characteristics and history, just punishment, and adequate deterrence. The district court explicitly mentioned its consideration of the § 3553(a) factors and Gomez-Lopez's mitigating evidence and concluded that Gomez-Lopez could use his time in prison to learn a trade in order to support his family. In short, Gomez-Lopez's sentence was reasonable and, accordingly, we affirm.

**AFFIRMED.**