[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 20, 2009
THOMAS K. KAHN
CLERK

No. 08-15100
Non-Argument Calendar

_____

D. C. Docket No. 07-00499-CR-T-17TGW

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CALVIN COLEMAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 20, 2009)

Before MARCUS, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Calvin Coleman appeals the sentence imposed following his convictions for

conspiracy to defraud the United States, embezzlement and theft of government funds, and public official corruption. Because we conclude that the district court properly applied an abuse-of-trust enhancement, we affirm.

Coleman was employed by the Tampa Housing Authority ("THA") as a Section 8 counselor. THA was responsible for administering federal funds through HUD's voucher program subsidizing housing for low-income families. As a counselor, Coleman was responsible for processing applications of potential landlords, verifying property ownership and insurance, administering the voucher program, and setting up payment to landlords. The housing subsidies were paid directly to landlords by THA, with the participant paying the difference between the actual rent and the subsidy.

Coleman and several other Section 8 counselors, created a "scheme to defraud THA and ultimately HUD" by signing up friends as bogus landlords and generating subsidy payments. The landlords did not have legitimate contracts with THA and did not have tenants approved by THA living in their properties. The counselors received kick-backs from these bogus landlords. Coleman also caused fraudulent utility allowance payments to be issued to the bogus landlords. To conceal his crimes, Coleman manipulated the THA database and used existing tenant information to avoid detection. Although each of the Section 8 counselors

2

involved in the scheme worked independently and recruited their own landlords, they were aware of the other participants in the scheme. Based on Coleman's involvement, HUD lost $488,912.

Coleman pleaded guilty to conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, nine counts of embezzlement and theft of government funds, in violation of 18 U.S.C. § 641, and two counts of public official corruption, in violation of 18 U.S.C. § 666(a)(1)(A)(i) and (ii).

In determining the sentencing guidelines range, the probation officer recommended a two-level abuse-of-trust enhancement, U.S.S.G. § 3B1.3. The probation officer concluded that Coleman stood in a position of trust with respect to THA, and his role as a Section 8 counselor enabled him to facilitate and conceal the offenses. Although the PSI indicated the scheme to defraud involved both THA and HUD, the PSI identified HUD as the only "victim" and listed restitution due only to HUD. Based on the guidelines calculations, Coleman's guidelines range was 46 to 57 months' imprisonment.

Relevant to this appeal, Coleman objected to the abuse-of-trust enhancement, arguing that he had no direct fiduciary relationship with the victim, HUD, and was only an intermediary. According to Coleman, the enhancement required a direct relationship between the federal entity and the defendant.

3

The government responded that the enhancement was proper because Coleman acted with discretion in his role as a Section 8 counselor and used his position to manipulate the system and conceal his crimes.

At sentencing, the court heard arguments on whether the enhancement could apply under a "pass-through" theory in which the defendant was an intermediary and not in a direct relationship with the victim.  The government asserted that Coleman used his position as a THA counselor to facilitate and conceal his crimes. Coleman argued that his relationship was only with THA, and the Eleventh Circuit had rejected the idea of "pass-through" fiduciary relationships.  In support, he cited United States v. Williams, 527 F.3d 1235 (11th Cir. 2008), in which the Eleventh Circuit held that the enhancement was improper when only the federal agency was the victim.

The court concluded that the "pass-through" concept was appropriate considering Coleman's exercise of decision-making authority, the nature of his participation in the offenses, his recruitment of others, his claimed right to a larger share of the money, his role in planning and organizing the scheme, the degree of control over others, and the scope of the illegal activity.  The court noted that Coleman recruited fake landlords, determined how funds would be distributed, set up kick-backs, used his knowledge of the program to conceal his crimes, and held a

position of public trust as a Section 8 counselor. After considering the guidelines and the sentencing factors, the court imposed a sentence of 50 months' imprisonment and ordered Coleman to pay restitution to HUD in the amount of $486,535.

On appeal, Coleman argues that the district court improperly applied the enhancement because his relationship was with THA, whereas HUD was the victim and he did not possess a position of trust with HUD. Coleman does not deny that he held a position of trust with THA, but asserts that, in the absence of a direct relationship of trust with the victim, there can be no enhancement.

We review de novo the application of the enhancement of a sentence for abuse of a position of trust. United States v. Louis, 559 F.3d 1220, 1224 (11th Cir. 2009). The district court's factual findings are reviewed for clear error. United States v. Mills, 138 F.3d 928, 941 (11th Cir. 1998).

A defendant is subject to a two-level enhancement of his sentence if he "abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. "The determination of whether a defendant occupied a position of trust is extremely fact sensitive." United States v. Britt, 388 F.3d 1369, 1372 (11th Cir. 2004), vacated on other grounds, 546 U.S. 930 (2005), reinstated in part, 437 F.3d

1103 (11th Cir. 2006).  The guidelines define "positions of public or private trust"

narrowly based on the professional discretion, if any, of the defendant:

> "Public or private trust" refers to a position of public or private trust
> characterized by professional or managerial discretion (i.e., substantial
> discretionary judgment that is ordinarily given considerable
> deference).  Persons holding such positions ordinarily are subject to
> significantly less supervision than employees whose responsibilities
> are primarily non-discretionary in nature.

U.S.S.G. § 3B1.3 (comment. n.1).  The defendant must, himself, hold a position of

trust.  United States v. Morris, 286 F.3d 1291, 1297 (11th Cir. 2002).  Sentencing

and reviewing courts must determine whether a defendant occupied a position of

trust by assessing the defendant's relationship to the victim of the crime.  United

States v. Garrison, 133 F.3d 831, 837 (11th Cir. 1998).  Therefore, the

abuse-of-trust adjustment "'applies only where the defendant has abused

discretionary authority entrusted to the defendant by the victim . . . .'"  Id. at 839

(quotation omitted); see also United States v. Walker, 490 F.3d 1282, 1300 (11th

Cir. 2007).  Section 3B1.3 applies in the fraud context where the defendant is in a

fiduciary, or other personal trust, relationship to the victim of the fraud, and "'the

defendant takes advantage of the relationship to perpetrate or conceal the offense.'"

Garrison, 133 F.3d at 838 (quotation omitted); Morris, 286 F.3d at 1299; United

States v. Harness, 180 F.3d 1232, 1236 (11th Cir. 1999).  "The relationship

between the defendant and the victim must be more significant than that of an

arm's-length business transaction." Harness, 180 F.3d at 1236. Nevertheless, a sentencing court must be careful not to be "overly broad" in imposing the enhancement or "the sentence of virtually every defendant who occupied any position of trust with anyone, victim or otherwise" would receive a § 3B1.3 enhancement. Garrison, 133 F.3d at 838.

In Williams, the defendant was employed as the executive director of a non-profit organization that received federal grants. 527 F.3d at 1238. Williams used the federal funds for unauthorized expenses and was convicted of wire fraud and theft of government funds. Id. at 1239. This court concluded that the enhancement did not apply because the independent federal agency was the victim of the crimes and Williams was not in a position of trust with respect to the government agency. 527 F.3d at 1251. The court considered the level of discretionary authority Williams had to manage the federal funds and determined that Williams lacked discretion in her role as executive director because the government agency would award funds only after approving a specific line-item budget and Williams was required only to show that her non-profit group spent the funds in the manner approved by the government. Id. Because Williams lacked a direct relationship with the government entity and lacked discretion in the administration of her position, the court agreed that the enhancement was improper. The court noted,

7

however, that there could be more than one victim and thus there could be abuse of a private position of trust. Id. at 1251 n.13.

In contrast, in Harness, the defendant was employed as an accountant for the Red Cross, which had obtained federal funds to assist with disaster relief. Harness embezzled the federal funds intended for the Red Cross and, through his position, falsified the books to conceal the crimes. At sentencing, Harness challenged the application of the abuse-of-trust enhancement, asserting that he lacked a direct relationship with the federal government. 180 F.3d at 1233. This court rejected the argument, noting that the PSI listed the Red Cross as a victim, and Harness's failure to challenge this conclusion permitted the court to rely on it to apply the enhancement. The court explained that Harness retained a position of trust with respect to the Red Cross due to the amount of discretion involved in his position and the ability to use the position to commit and conceal the crimes. Id. at 12236-37.

Upon review, we find the reasoning of Harness persuasive and conclude the court properly applied the enhancement to Coleman's offenses. First, the PSI alleged, and Coleman did not challenge, the scheme would defraud both the THA and HUD. See Harness, 180 F.3d at 1236. Although Coleman initially disputed that he defrauded THA, he later withdrew this objection. Because Coleman did not

8

object to the facts as set forth in the PSI, they are deemed admitted. United States v. Wade, 458 F.3d 1273, 1277 (11th Cir. 2006). Thus, the sentencing court was permitted to rely upon them without error even if there was an absence of supporting evidence. United States v. Hedges, 175 F.3d 1312, 1315 (11th Cir. 1999). Accordingly, although the PSI did not list THA as a "victim," Coleman's admission that his scheme would defraud THA justified the district court's conclusion that THA was a victim.

Second, Coleman conceded that he was in a position of trust with THA. Coleman's position enabled him to commit the crimes and to conceal his offenses. And Coleman acted with discretion and little supervision in his role as a Section 8 counselor. He was responsible for processing applications of potential landlords, verifying property ownership and insurance, administering the voucher program, and setting up payment to landlords. He used his position to enroll bogus landlords, obtain kick-backs, and determined how the funds would be distributed. His access to the data base enabled him to use existing tenants to hide his crimes. Thus, like the defendant in Harness and unlike the defendant in Williams, Coleman exhibited a position of trust with THA and retained sufficient discretionary authority in the management of the federal funds.

Accordingly, because THA was a victim of the offenses and Coleman

retained a position of trust with THA that included discretion and little supervision, and because Coleman used his position to commit and conceal the crimes, the district court properly applied the enhancement. [1]

**AFFIRMED.**

---

[1] We may affirm on any adequate grounds even if those grounds differ from the district court's. United States v. Cover, 199 F.3d 1270, 1277 (11th Cir. 2000). Because Coleman's relationship with THA was sufficient to support the enhancement, we need not consider the "pass-through" theory.