[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-11626
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 31, 2010
JOHN LEY
CLERK

D.C. Docket No. 4:09-cr-00166-WTM-GRS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BENJAMIN SHEFTALL EICHHOLZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(August 31, 2010)

Before BLACK, HULL and PRYOR, Circuit Judges.

PER CURIAM:

After pleading guilty, Benjamin Eichholz appeals his 21-month sentence for

obstruction of a Department of Labor ("DOL") investigation, in violation of 18

U.S.C. § 1505. Eichholz argues that the district court erred when it imposed a sentencing enhancement pursuant to U.S.S.G. § 3B1.3 for abuse of a position of trust. After review, we affirm.

## I. BACKGROUND

### A. Eichholz's Employee Benefits Plans

Eichholz, an attorney, owned a law firm most recently known as The Eichholz Law Firm. In 1991, Eichholz established two benefits plans to provide retirement and pension benefits for long-time employees of the law firm ("the plans"). The plans were subject to the requirements of Title I of the Employee Retirement Security Act of 1974 ("ERISA"). The plans had nineteen participants, including Eichholz and his mother, but the participants' interest in the plans varied. The plans were funded by employer contributions from the firm, for which Eichholz was allowed a tax deduction.

Eichholz served as the sole fiduciary of the plans. Erskine and Associates was the plans' third-party administrator and provided consultive, administrative and record-keeping services. As the plans' fiduciary, Eichholz was required to file Form 5500 with the DOL providing information about the plans' assets, liabilities and kinds of investments. Sherrie Erskine of Erskine and Associates prepared the Form 5500s for Eichholz using information Eichholz and his employees provided.

2

The plans' rules prohibited Eichholz from issuing loans to participants and also discouraged a large number of loans because they were not considered safe investments. Nonetheless, a significant portion of the plans' assets were outstanding loans.

## B.     DOL's April 18, 2007 Interview

In February 2007, based on Form 5500s filed by Eichholz, the DOL began a civil investigation into Eichholz's management of the plans. The DOL suspected that the plans' assets may have been used for personal gain because of (1) the small number of plan participants, only a few of which held an interest in a large percentage of the assets, and (2) the large number of loans listed as the plans' assets. In March 2007, the DOL notified Eichholz of its investigation and requested an interview.

During an April 18, 2007 interview with a DOL investigator, Eichholz said that he purchased Flora Danica china as an investment for the plans. However, the investigator later learned that the china was displayed in a cabinet in Eichholz's home.

The investigator asked Eichholz about the plans' loans. Eichholz said that a $50,000 loan to James Cole was repaid the week before the interview. However, when the DOL investigator interviewed Cole, he denied receiving or paying back

a loan from the plans. The DOL investigator then determined that the $50,000 check representing the purported Cole loan was deposited into an account controlled by Eichholz.

Eichholz told the DOL investigator that the plans issued a loan to an individual identified only as "Eubanks." The DOL investigator could not locate Eubanks, but determined that the check representing the loan proceeds was deposited into an account held by Eichholz.

Finally, during the interview, Eichholz told the DOL investigator that he did not have an ownership interest in Delta Building Systems, a company that received several loans from the plans. The DOL investigator later learned that Eichholz owned 100 percent of the company and that a few days before the interview Eichholz had filed documents with the Georgia Secretary of State's office removing his name as the chief executive officer.

## C.   DOL's Subsequent Interviews

On June 22, 2007, Eichholz sent the DOL a document that purported to detail the plans' outstanding loans. The list included loans to Eubanks, Delta Building Systems, Greg Hirsch and Richard Crose. In subsequent DOL interviews, Hirsch and Crose denied receiving loans from the plans. Yet, in a second interview on August 2, 2007, Eichholz reiterated that Eubanks, Hirsch,

4

Crose and Cole had received loans from the plans and that Cole had repaid his loan. Eichholz also stated that Hirsch had repaid his loan by transferring stock to the plans.

On December 10, 2007, DOL investigators interviewed Eichholz a third time and asked about plan checks issued to Crose, Joseph Benefield and Endermology Associations, a company owned by Eichholz's wife. Eichholz told DOL investigators the checks represented loans. However, the endorsements revealed that the checks were deposited into accounts controlled by Eichholz. In a fourth interview on January 8, 2008, Eichholz again denied any interest in Delta Building Systems and claimed that another plan check to Delta Building Systems represented a loan. However, this check was also deposited into an account controlled by Eichholz.

## D.     Grand Jury Indictment

In subsequent federal grand jury proceedings, Sherrie Erskine testified that she repeatedly warned Eichholz about the number of loans Eichholz issued with plan funds and that he might be engaging in prohibited transactions. Erskine instructed Eichholz on the rules of the plans and provided him with documentation supporting her assertions. Once the DOL investigation began, Eichholz asked Erskine about closing the plans. In addition, James Cole, James Benefield, Greg

5

Hirsch and Richard Crose testified that they had not received any loans from the plans.

On August 5, 2009, the grand jury returned a 77-count indictment against Eichholz, including thirty counts of embezzlement from the plans, 18 U.S.C. § 664; four counts of money laundering, in violation of 18 U.S.C. § 1957; ten counts of mail fraud, in violation of 18 U.S.C. § 1341; ten counts of false statements and concealment of facts in employee benefit plan records and reports, in violation of 18 U.S.C. § 1027; twenty-two counts of false statements, in violation of 18 U.S.C. § 1001; and one count (Count 55) of obstruction of a DOL investigation, in violation of 18 U.S.C. § 1505.  Count 55 listed numerous allegedly false and misleading statements Eichholz made to DOL investigators during their investigation about the plans' assets, liabilities and investments.

**E.    Guilty Plea**

Pursuant to a written plea agreement, Eichholz pled guilty to Count 55.  In addition to pleading guilty, Eichholz agreed to the entry of an order of restitution for the losses to his identifiable victims, excluding himself and his mother.  In exchange for Eichholz's guilty plea, the government agreed, among other things, that it would recommend that the district court not apply a sentencing enhancement pursuant to U.S.S.G. § 3B1.3 for abuse of a position of trust.

6

However, the government retained the right to bring all sentencing facts to the court's attention.

As the factual basis for Eichholz's plea, the plea agreement stated that: (1) during a January 8, 2008 interview, a DOL investigator asked Eichholz about Eichholz's interest in Delta Building Systems, which had received substantial loans from the plans; and (2) in response, in order to obstruct, influence and impede the DOL investigation, Eichholz falsely stated that he was not a Delta Building Systems shareholder when in fact he knew he owned 100 percent of the company.

At Eichholz's plea hearing, Eichholz stated that he was pleading guilty to Count 55 based on the facts related to Delta Building Systems. The government's proffer and Eichholz's allocution identified his false statement concerning his interest in Delta Building Systems, which received $227,000 in loans from the plans, as the factual basis for his guilty plea.

## F.     Presentence Investigation Report

Eichholz's Presentence Investigation Report ("PSI") recounted the DOL's investigation and Eichholz's responses to it, as discussed above. In all, the PSI listed thirty checks that were improperly issued by Eichholz from the plans. Sixteen of those checks had not been repaid, totaling $294,807.99 in losses. These

7

checks were reportedly repaid via Eichholz's transfer of Newsgrade stock to the plans. However, the stock had little, if any, value, and Eichholz agreed to repay the plans for those checks.

The PSI identified the plan participants, other than Eichholz and his mother, as the "victims of the instant offense." These seventeen plan participants cumulatively held a 17.57 percent interest in the plans. Accordingly, the plans were due $50,117.36 in restitution.

The PSI calculated a base offense level of 14, pursuant to U.S.S.G. § 2J1.2 and gave a two-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a). With a total offense level of 12 and a criminal history category of I, the PSI recommended an advisory guidelines range of 10 to 16 months' imprisonment. The probation officer noted that while Eichholz had admitted obstructing the DOL investigation by lying only about his ownership interest in Delta Building Systems, his obstructive conduct was much more extensive. Nevertheless, the probation officer recommended a 10-month sentence. Eichholz did not file any objections to the PSI.

Prior to sentencing, the district court gave Eichholz notice by letter that it was considering applying a § 3B1.3 enhancement for abuse of a position of trust. In response, the government noted its obligation in the plea agreement to recommend that the court not apply a § 3B1.3 enhancement. However, in

8

addressing the various 18 U.S.C. § 3553(a) factors, the government argued that although Eichholz admitted during his plea colloquy only one obstructive act (lying about his ownership of Delta Building Systems), Eichholz had lied about other things as well (such as the purported loans to Cole, Eubanks, Hirsch and Crose) and had engaged in other acts of obstruction (such as submitting false documents to the DOL and refusing to provide other information to DOL investigators) during the almost year-long investigation. The government asked for a sentence "at the top of the advisory guidelines as found by the Court."

In a sentencing memorandum, Eichholz reiterated that he had no objection to the contents of the PSI. Eichholz opposed a § 3B1.3 enhancement for an abuse of a position of trust. Eichholz argued that § 3B1.3 did not apply because the embezzlement charges were dismissed and the PSI reflected that no embezzlement occurred given that he either had already repaid the loans or had agreed to repay the loans. Eichholz asked for a downward variance based on his age and the fact that he had already lost his business and his law license.

E.    Sentencing Hearing

At the sentencing hearing, Eichholz confirmed that he had no objections to the facts in the PSI. The district court then adopted the PSI's facts as its findings of fact. However, the district court declined to adopt the PSI's conclusions regarding the applicable guidelines.

During discussions with counsel about § 3B1.3's abuse-of-trust enhancement, the district court noted that Eichholz was the sole fiduciary for the plans and that the DOL went to question Eichholz only because he was the plans' sole fiduciary. Eichholz restated his argument that the PSI revealed no embezzlement had occurred because all the loans were repaid. Eichholz stressed that (1) the offense of conviction was obstruction of a DOL investigation, (2) the government, and not the plans' participants, was the victim of that offense and (3) Eichholz did not have a fiduciary duty to the government.

The district court applied the abuse of trust enhancement.[1] The district court noted that (1) the purpose of the DOL investigation was to determine how Eichholz, as the plans' sole fiduciary, was managing them and (2) Eichholz pled guilty to obstruction of that DOL investigation. The district court found that Eichholz, as the fiduciary, did not properly manage and administer the plans. The district court determined that (1) the PSI identified the plan participants as victims of the offense, (2) Eichholz's position as fiduciary of the plans was "a position of trust with respect to the plans' participants," (3) under ERISA, a benefit plan fiduciary exercises discretionary authority and control over the management of the plan and the management and disposition of its assets and has the discretionary

---

[1] The district court considered, but ultimately declined to apply, an enhancement for substantial interference with the administration of justice, pursuant to U.S.S.G. § 2J1.2(b)(2).

10

authority in the administration of the plan, (4) "[a]s sole fiduciary of the plans, Mr.

Eichholz occupied a unique and very discretionary position with respect to the

plans, and this position clearly contributed significantly to his commission and

concealment of the offense," and (5) "the facts as admitted to in the PSI and the

plea that Mr. Eichholz made clearly indicate that on numerous occasions Mr.

Eichholz gave false information and made false statements to the labor department

investigator, and refused to furnish documentation to the labor department

investigator during the course of the investigation, and by doing so interfered with

the investigation being conducted by the labor department . . . ."

After applying the two-level abuse-of-trust enhancement, the district court

calculated a total offense level of 14, which, combined with a criminal history

category of I, yielded an advisory guidelines range of 15 to 21 months. Eichholz

requested a 10-month sentence. Emphasizing, inter alia, that Eichholz repeatedly

lied to the DOL during the investigation, the government recommended a 21-

month sentence. Eichholz took exception to the government's statements that he

repeatedly lied, arguing that he would have defended against those allegations had

he gone to trial. The district court advised Eichholz that he could withdraw his

guilty plea before the court pronounced his sentence and reminded Eichholz that

he was told during his plea hearing that the court could consider all relevant

conduct not just the count of conviction. Eichholz stated that he did not want to

11

withdraw his guilty plea.

The district court then imposed a 21-month sentence. The district court ordered Eichholz to pay restitution in the amount of $50,117.36 to the plans. The district court directed Eichholz to pay the restitution to the district court clerk "for disbursement to the victims." Eichholz filed this appeal challenging only the abuse-of-trust enhancement.

## II. DISCUSSION

### A.    Abuse-of-Trust Enhancement

A defendant's offense level is increased by two levels if the defendant abused of a position of public or private trust "in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. For the enhancement to apply, the government must show: "(1) that the defendant held a place of public or private trust; and (2) that the defendant abused that position in a way that significantly facilitated the commission or concealment of the offense." United States v. Ward, 222 F.3d 909, 911 (11th Cir. 2000). The enhancement applies only when the victim of the offense conferred the trust. United States v. Walker, 490 F.3d 1282, 1300 (11th Cir. 2007).[2]

---

[2]We review for clear error a district court's factual determination that the defendant abused a position of trust and review de novo the district court's legal conclusion that the defendant's conduct justifies application of the abuse-of-trust enhancement. United States v. Garrison, 133 F.3d 831, 837 (11th Cir. 1998).

12

Eichholz does not dispute that he held a position of private trust as the fiduciary of the plans. Instead, Eichholz argues that the victim of his offense of conviction was the DOL and that he did not hold or abuse a position of trust as to the DOL. Although the DOL may be a victim of Eichholz's offense, the PSI, to which Eichholz did not object, listed the plans' participants as victims.

Specifically, the PSI contained these facts: (1) the victims of Eichholz's offense were the participants of the plans, with the exception of Eichholz and his mother; (2) Eichholz had not repaid $294,807.99 in checks improperly issued from the plans; and (3) Eichholz had agreed to pay back those outstanding improperly issued checks. The PSI recommended that restitution be awarded to the plans in the amount of $50,117.36, which represented the 17.75 percent interest held by the plan-participant victims. Eichholz accepted the PSI's victim restitution recommendation and has not objected to repaying restitution in the amount of $50,117.36.

More importantly, the district court adopted the PSI's facts without objection. To the extent Eichholz now argues that the evidence was insufficient to support a finding that the plan participants were victims of his offense, this argument has been waived. See United States v. Beckles, 565 F.3d 832, 844 (11th Cir. 2009) ("It is the law of this circuit that a failure to object to allegations of fact in a PSI admits those facts for sentencing purposes and precludes the argument

13

that there was error in them." (quotation marks omitted)); United States v. Hedges, 175 F.3d 1312, 1315 (11th Cir. 1999) (concluding that district court properly may rely on undisputed conclusory statements in PSI "despite the absence of supporting evidence").

In a similar case, this Court concluded that when the defendant failed to object to the PSI's identification of the victim, the district court could rely upon that victim in imposing an abuse-of-trust enhancement. See United States v. Harness, 180 F.3d 1232, 1236 (11th Cir. 1999) (upholding abuse-of-trust enhancement where defendant, an accountant employed by non-profit organization, did not object to PSI's identification of non-profit organization, rather than government, as the victim of the defendant's illegal diversion to himself of federal funds intended for the non-profit); cf. United States v. Williams, 527 F.3d 1235, 1251 & n.13 (11th Cir. 2008) (rejecting abuse-of-trust enhancement where government did not object to PSI's identification of government, rather than employer, as the victim of the defendant's theft of federal funds, but acknowledging that district court could have considered additional victims). Accordingly, Eichholz's failure to object to the PSI's identification of the plans' participants as the victims of his offense permitted the district court to rely upon that fact in imposing the abuse-of-trust enhancement.

Alternatively, Eichholz argues that his abuse of his position of trust as the

14

plans' fiduciary did not facilitate the offense of obstructing the DOL investigation. To satisfy U.S.S.G. § 3B1.3's significant facilitation requirement, the abuse of the trust must be tied to the offense of conviction. United States v. Barakat, 130 F.3d 1448, 1455 (11th Cir. 1997). There is significant facilitation when "the person in the position of trust has an advantage in committing the crime because of the trust and uses that advantage in order to commit the crime." Id.

As the district court pointed out, the DOL approached Eichholz during its investigation precisely because he was the plans' fiduciary. Eichholz's cooperation with the DOL investigation (or lack thereof) was as the plans' fiduciary. It was Eichholz's position as the plans' fiduciary that provided him the opportunity and ability to commit the offense of conviction. Thus, Eichholz had an advantage by virtue of his fiduciary position and used it to obstruct the DOL investigation.

Furthermore, Eichholz's argument limits his abuse of his position of trust to his mismanagement of the plans' assets, when in fact Eichholz's actions during the DOL investigation continued to abuse his position of trust. ERISA requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1), and "with the care, skill, prudence, and diligence" of a prudent person in similar circumstances. 29 U.S.C. § 1104(a)(1), (a)(1)(B). The DOL investigators were investigating the possibility

15

that the plans' assets were being used for personal gain and were particularly

concerned about the large percentage of plan assets that were loans. Eichholz's

lying about the circumstances of those loans (i.e., to whom the plans had extended

loans and whether Eichholz had an interest in the plans' debtors) was not an act

"solely in the interest of the participants and beneficiaries" of the plans.[3] Rather, it

was an act solely in the interest of Eichholz. Furthermore, Eichholz did not

respond to the DOL investigators' investigation with the care, skill or diligence of

a prudent plan fiduciary. By making false statements as to the plans' assets,

Eichholz further abused his fiduciary duties to the plans' participants and at the

same time "significantly facilitated" his obstruction of the DOL's investigation

into his suspected plan mismanagement.

## B.    Double Counting

We also reject Eichholz's claim that the abuse-of-trust enhancement is

impermissible double counting.[4] Eichholz's base offense level of 14 was derived

---

[3]In applying the abuse-of-trust enhancement, the district court was permitted to consider all relevant conduct related to the offense of conviction. See Barakat, 130 F.3d at 1455; see also U.S.S.G. § 1B1.3(a) (authorizing the sentencing court to consider as relevant conduct all acts or omissions by the defendant that occurred in preparation for, during the commission of, or in attempting to avoid detection or responsibility for the offense of conviction). Thus, the district court was not limited to Eichholz's false statements about his ownership interest in Delta Building Systems, but could also consider his false statements to DOL investigators about the purported loans to individuals such as Cole, Hirsch and Crose and his attempt to close the plans once the investigation began.

[4]We ordinarily review de novo a claim of double counting. United States v. De La Cruz Suarez, 601 F.3d 1202, 1220 (11th Cir.), cert. denied sub nom., Vazquez v. United States, 130 S. Ct.

16

from U.S.S.G. § 2J1.2, which covers various offenses qualifying as a form of obstruction of justice, not just those involving an abuse of a position of trust or the breach of a fiduciary duty. See U.S.S.G. § 2J1.2 cmt. background (listing the variety of offenses that constitute obstruction of justice covered by § 2J2.2). Thus, Eichholz's base offense level did not take into account Eichholz's abuse of his position of private trust vis-a-vis the plans' participants. See United States v. Bracciale, 374 F.3d 998, 1005, 1010 (11th Cir. 2004) (concluding that application of the abuse-of-trust enhancement is not impermissible double counting where the defendant's base-offense-level guideline covers a wide variety of crimes and its application is "not dependent on any abuse of trust or breach of fiduciary duty"). We find no error, plain or otherwise, with regard to the double-counting issue.

For these reasons, the district court did not err in applying the two-level abuse-of-trust enhancement in calculating Eichholz's advisory guidelines range.[5] We affirm Eichholz's 21-month sentence.

---

3532 (2010). However, because Eichholz did not raise his double-counting argument in the district court, our review is for plain error. See United States v. Neely, 979 F.2d 1522, 1523 (11th Cir. 1992) (explaining that objections to a sentence raised for the first time on appeal are subject to the plain error doctrine).

[5]We reject Eichholz's argument that the government breached the plea agreement by defending the district court's imposition of the abuse-of-trust enhancement on appeal. Eichholz's plea agreement required the government to recommend that the sentencing court "not apply" the abuse-of-trust enhancement. Once the sentencing court imposed the enhancement over the government's recommendation, nothing in the plea agreement prohibited the government from responding in opposition to Eichholz's appeal.

**AFFIRMED.**